## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LUKASZ CUDZILO,**

      Plaintiff,

vs.                                                                  **Case No.  8:05-CV-1547-T-EAJ**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

_____/

## <u>FINAL ORDER</u>

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole.  <u>See</u> 42 U.S.C. § 405(g).   Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide

---

[1]  The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 8).

the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed his application for DIB on April 2, 2002, and his application for SSI on March 28, 2002. (T 56-58, 437-440)  Plaintiff alleges a disability onset date of December 6, 2001. (T 56, 437)  As of the ALJ's September 23, 2004 decision, Plaintiff was fifty-two years old with the equivalent of a high school education. (T 14)  He claims that he is disabled due to depression, anxiety, heart disease, emphysema, asthma, and diabetes. (Id.)

The ALJ found that Plaintiff had engaged in substantial work activity since the alleged onset of disability but that he had not worked as of May 19, 2003, the date of the administrative hearing.[2] (T 21) Plaintiff worked five to six days a week delivering prescription drugs to nursing homes. (T 83)  Plaintiff was required to lift less than 10 pounds and sat for six to eight hours a day.  Plaintiff stopped working because his employer was purchased by another company and relocated to South St. Petersburg. (T 505) The ALJ found that Plaintiff had the following severe impairments: coronary artery disease, diabetes under poor control, asthma, major depressive disorder, and post traumatic

---

[2]  Plaintiff worked until December of 2002 as a delivery driver for a pharmacy. (T 73)

stress disorder ("PTSD"). (T 19)  However, the ALJ concluded that Plaintiff's impairments did not meet or equal an impairment listed in the Listing of Impairments. (T 19, 21)

The ALJ determined that Plaintiff had a residual functional capacity ("RFC") for a full range of light work with the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand, sit, and/or walk about six hours, with unlimited pushing/pulling. (T 19)  Plaintiff had a "moderate" limitation in the ability to respond to changes in routine work settings but was still able to function satisfactorily in this respect. (T 21)

The ALJ did not hear testimony from a vocational expert but concluded that Plaintiff can return to his past relevant work as a pharmacy courier, as actually performed. (T 21)  The Appeals Council denied Plaintiff's request for review on June 27, 2005, and allowed the ALJ's decision to stand. (T 3)  Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff argues that the Commissioner erred because: (1) the ALJ failed to giver proper weight to the opinions of claimant's treating physician; (2) the ALJ's finding that claimant can perform light work and can return to his past relevant work as a pharmacy courier is not based on substantial evidence; and (3) the ALJ made credibility findings which were not based on a full and accurate reading of the record.  Additionally, Plaintiff has filed a separate motion to remand for the Commissioner to consider new evidence (Dkt. 18).  The Commissioner opposes this relief as well (Dkt. 19 ).

Except for the new evidence submitted with the motion to remand, the medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

3

## II.

**A.**     The initial issue is whether Plaintiff's motion for remand should be granted.  For the reasons which follow, the court finds that this relief should be denied.

Plaintiff submits that remand is required under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence, specifically medical records not previously submitted by Plaintiff's counsel.

To obtain a "sentence six" remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable possibility that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level.  Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988) (citation and internal quotation marks omitted).

Plaintiff states that the new evidence, attached to the motion to remand as Exhibits A through C, provides further evidence of Plaintiff's severe heart condition, supports Plaintiff's testimony at the hearing that he has undergone several heart procedures, and provides further evidence of his credibility.

The ALJ's decision cited Plaintiff's testimony that he had "13 or 14 angioplasties since 1991, all but one at the Morton Plant Hospital." (T 20)  However, the ALJ discounted this testimony because Morton Plant Hospital records that Plaintiff's counsel provided after the hearing "showed one admission on May 1, 2003 for chest pain which was determined not to be cardiac in nature." (Id.)  Noting evidence that "other statements by treating cardiologists confirm that [Plaintiff's] heart condition is stable", the ALJ concluded that Plaintiff "exaggerated the extent of his treatment and the severity of his symptoms."  (Id.)

4

Except for one document dated August 3, 2005, the additional evidence submitted by Plaintiff spans the time period of January 13, 2006, through March 5, 2006. The administrative hearing was conducted on May 19, 2003, and the ALJ's decision was entered on September 23, 2004. (T 22, 494)

Included in the medical records (Exhibit A) is a three-page English translation of hospital records from Olsztyn, Poland, where Plaintiff was treated after being admitted for discomfort and a burning sensation in the chest and difficulty breathing after a transportation accident; Plaintiff also complained of anxiety. Due to high level of glucose, he was given insulin. He was released the same day. There is no indication of any heart procedures performed during this hospital visit other than a cardiogram.

The next set of records (Exhibit B) contains both handwritten and typed treatment notes from Morton Plant Primary Care in 2005 and 2006. On August 3, 2005, Plaintiff was seen for pre-op testing (he was scheduled for an "ESI" apparently relating to back pain), and the consultation was to see if he could "get off the Plavix for 7 days." The consulting physician apparently thought so because he noted that Plaintiff's angioplasty was a number of months ago, that Plaintiff did not have a follow up with his cardiologist, and that Plaintiff's CAD was stable and Plaintiff was asymptomatic. On February 24, 2006, Plaintiff reported an episode of chest pain which disappeared after he took two Nitros. He reported having chest pain in Poland several weeks prior to that visit. An EKG showed normal sinus rhythm and a prior old inferior wall MI but otherwise no change from the prior EKG. The attending physician sent Plaintiff to the ER for evaluation because of Plaintiff's CAD and chest pain "highly suggestive of angina" as well as hypertension, which was not well controlled at that time. Handwritten notes for March 14, 2006, and May 5, 2006, are not legible in

their entirety but show some complaints about wheezing and breathing problems and concern about weight gain.

The final set of records submitted with the motion to remand (Exhibit C) relates to Plaintiff's hospitalization at Morton Plant Hospital on February 24, 2006, apparently in connection with the initial visit to the primary care center discussed above.  He was admitted for a cardiac work-up.  The admitting note described Plaintiff as having a "significant cardiac history including myocardial infarction x2, coronary artery disease status post CABGx3 and angioplasty and stenting, diabetes mellitus, hypertension, and hyperlipidemia."  Plaintiff reported being in Poland for two months and experiencing multiple episodes of stable angina while walking; however, he reported that the chest pain was  relieved with nitroglycerin.   His recent chest pains occurred when he was exercising on his abdominal machine.   On discharge on February 27, 2006, Plaintiff was reported to be in good condition; medical therapy and risk factor modification were recommended.

These records (Exhibits A-C) relate to a period of time significantly after the ALJ's hearing and decision. The Commissioner asserts that they are not material to the ALJ's decision that Plaintiff is not disabled.  This court agrees.  The ALJ's findings regarding Plaintiff's non-disability relate to the date of the alleged disability onset –  December 6, 2001 – and continue through the date of the ALJ's decision on September 23, 2004. (T 13-22)  The records submitted with the motion to remand relate to a single pre-op medical visit on August 3, 2005; the remainder of the records are for 2006. Accordingly, because they post-date the ALJ's determination by a substantial period of time, they are not material to the ALJ's decision.

If the records were closer in time, they would probably not be material either because they reflect that Plaintiff's angina due to his heart condition was reasonably well controlled.  The records

also do not corroborate Plaintiff's testimony, rejected by the ALJ, that he had 13 or 14 angioplasties since 1991.

Since the proffered new evidence is not material to the ALJ's decision, it is unnecessary to determine whether it meets the other requirements for a remand under sentence six of 42 U.S.C. §405(g).  Accordingly, the motion to remand is denied.

**B.**     Turning to the first issue in this appeal, Plaintiff contends that the Commissioner did not properly evaluate the opinions of his treating psychiatrist, Jason Mastor, M.D. ("Dr. Mastor"), who opined that Plaintiff had significant work-related restrictions due to PTSD and ADHD (Dkt. 16 at 15-22).   Instead, Plaintiff contends that the ALJ improperly relied on the opinions of a non-examining medical expert.

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the opinion of a treating physician regarding a disability or inability to work may be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the evidence.  Bloodsworth, 703 F.2d at 1240; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).  The Commissioner's reliance on agency physicians' assessments, standing alone, does not provide substantial evidence especially when contrary to those of treating physicians.  Spencer ex. rel. Spencer v. Heckler, 765 F. 2d 1090, 1094 (11th Cir. 1985).

Dr. Mastor, who treated Plaintiff from December 17, 2001, to April 12, 2004, prescribed individual and group therapy as well as medications. (T 16)  Plaintiff's treatment with Dr. Mastor began after his hospitalization on December 9, 2001, when he was admitted because his wife was concerned about a suicide attempt. (T 15-16)

On January 23, 2003, Dr. Mastor completed a mental health report regarding Plaintiff and diagnosed him with PTSD and ADHD. (T 344-45)  Dr. Mastor indicated that Plaintiff's mood was good, although sometimes frustrated.  He reported that Plaintiff's thought process was organized with some distractibility.  Regarding Plaintiff's ability to concentrate, Dr. Mastor concluded that Plaintiff is unable to perform activities requiring even modest concentration and that this problem as well as Plaintiff's low frustration tolerance prevent him from performing all but the simplest of tasks: Dr. Mastor opined that Plaintiff was capable of one-step operations that require very little thought or computation. (Id.)

On April 14, 2003, Dr. Mastor again completed a mental health questionnaire concerning Plaintiff. (T 373-80)  Dr. Mastor diagnosed PTSD and ADHD with a Global Assessment of Functioning ("GAF") of 55.  According to Dr. Mastor, Plaintiff's impairments were severe enough to interfere with his ability to work prior to December of 2001 at the earliest.  Dr. Mastor also concluded that Plaintiff's mental status had "shown improvement", and that his prognosis was fair despite problems of memory and concentration. (T 374)  Dr. Mastor anticipated that Plaintiff's condition would cause him to be absent from work more than three times every month. (T 376)  As to unskilled work, Dr. Mastor opined that Plaintiff had a fair ability to understand, remember, and carry out simple instructions, but he concluded that Plaintiff had no or poor ability to carry out detailed instructions. (T 377-78)  When asked to what degree Plaintiff's mental impairments cause functional limitations, Dr. Mastor answered that Plaintiff had a slight restriction of daily activities and a marked difficulty in maintaining social functioning. (T 379) Dr. Mastor anticipated that Plaintiff's concentration deficiencies would frequently prevent Plaintiff from completing tasks in a timely manner. (Id.)

At the hearing, the ALJ called a medical expert, David B. Kazar, Ph.D. ("Dr. Kazar"), a Board-certified clinical psychologist, to assess medical evidence, including the findings and conclusions of Dr. Mastor. (T 541)  Dr. Kazar attended the administrative hearing but never treated Plaintiff; the ALJ asked Dr. Kazar to evaluate the evidence of record. (Id.)  Dr. Kazar agreed with a diagnosis of major depressive disorder, recurrent. (T 544)  According to Dr. Kazar, Plaintiff may have also suffered from PTSD, but the presence of post traumatic stress symptoms is poorly developed in the record. (Id.)  Although Plaintiff testified to difficulties in concentration or thinking, Dr. Kazar concluded that these symptoms were not corroborated by the evidence. (T 545)

Dr. Kazar disagreed with the functional limitations chart Dr. Mastor completed as a part of his April 14, 2003 questionnaire and explained that his opinions were based on more recent records. (T 546-48) For example, in notes of Dr. Mastor's April 12, 2004 mental health examination, which postdate both of his questionnaires described above, Dr. Mastor reported that Plaintiff felt "ok". (T 381, 546)  Dr. Mastor assessed Plaintiff's memory as grossly intact, his attention and concentration as good, and his thought process as organized.  Plaintiff's medication compliance was described as good, as was the therapeutic effect. (Id.)  Further, over the treatment period of August 15, 2002, until March 10, 2003, Dr. Mastor assessed Plaintiff's attention score as fair to good. (T 360-68)

The ALJ did not give controlling weight to the opinions of Dr. Mastor because he found them to be inconsistent and also contrary to Dr. Kazar's assessment as the medical expert.  (T 20)  While finding that Plaintiff suffered from two severe mental impairments (major depressive disorder, recurrent, moderate, and PTSD), the ALJ concluded that Plaintiff had the mental RFC to perform the requirements of light work except that he had "moderate" limitation in the ability to

9

respond to changes in routine work settings.  In all other areas of mental functioning, the ALJ found only "slight" limitations.  (T 19, 21)

The ALJ rejected Dr. Mastor's opinions regarding Plaintiff's work-related restrictions because they were inconsistent with Dr. Mastor's own office visit notes.  (T 18) Thus, the ALJ had good cause to credit Dr. Kazar's testimony concerning Plaintiff's mental limitations.   During the treatment period of August 15, 2002, until March 10, 2003, Dr. Mastor assessed Plaintiff's attention score as fair to good; however, on the April 14, 2003 questionnaire, Dr. Mastor noted that the degree of Plaintiff's concentration deficiencies were "frequent".  (T 360-68, 373-80)  The medical expert reconciled these statements by opining that on April 14, 2003, Dr. Mastor was indicating that Plaintiff had frequent lapses of concentration, not that the lapses themselves were severe. (T 18) The ALJ distinguished Plaintiff's frequent mind-wandering from an inability to concentrate when there is a need to pay attention to a task at hand. (Id.)  Further, the ALJ noted that the degrees of limitations listed on the April 14, 2003 questionnaire are not the same as those contained in the Listing of Impairments or the Psychiatric Review Form, where the degrees of limitations are characterized as "none", "mild", "moderate", "marked", or "severe". (Id.)

Additionally, as to Dr. Mastor's opinion on January 23, 2003, that Plaintiff could perform only simple, one-step tasks, Dr. Kazar pointed out that a single-step operation is usually a task mastered at around age three. (T 18)  The ability to master no more than a one-step task is not consistent with an average intellectual capacity and a grossly intact or good memory which is Dr. Mastor's assessment of Plaintiff in his treating notes from August 15, 2002, to March 10, 2003. (T 360-68)

The duty to resolve conflicts in the evidence is the duty of the Commissioner, not the reviewing court.  See generally Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  Even if the preponderance of evidence may outweigh the evidence cited by the ALJ, the ALJ's finding must be affirmed as long as there is substantial evidence to support it.  See generally Parker v. Bowen, 788 F.2d 1512, 1521-22 (11th Cir. 1986) (en banc).  This court concludes that substantial evidence supports the ALJ's decision to reject Dr. Mastor's opinions regarding Plaintiff's work-related restrictions.

**C.**     Plaintiff's next argument is closely related to the discussion above and concerns the ALJ's finding that, notwithstanding certain impairments, Plaintiff is able to perform his former work as a pharmacy courier.  Plaintiff contends that the ALJ did not cite to any medical opinions from examining physicians such as Dr. Mastor in support of the RFC determination that Plaintiff is able to perform a full range of light work.

Residual functional capacity is a medical determination to be made by the ALJ.  See generally 20 C.F.R. §§ 416.945, 416.946.  It is true that the ALJ relied on the opinion of the non-examining medical expert, Dr. Kazar, in determining Plaintiff's mental RFC.  (T 19 )  The ALJ also cited an assessment from a state agency physician that Plaintiff is able to perform the requirements of light work.  (Id.)  However, it is not improper for an ALJ to consider the opinions of non-examining, non-treating physicians provided that the opinion of the treating physician is accorded the proper weight.  Here, the ALJ found good cause to reject Dr. Mastor's opinion.  See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (holding that good cause supported the ALJ's rejection of treating physician's disability determination and that the ALJ properly relied on non-treating physician reports in making listing determination).  Further, if the treating physician's

opinion is not supported by objective medical evidence, it may be discounted.  Holly v. Chater, 931 F.Supp. 840, 848 (S.D. Fla. 1996).

As discussed at length above, the ALJ showed good cause for not relying on Dr. Mastor's opinion of Plaintiff's mental limitations. Importantly, the ALJ did not rely solely on the assessments of Dr. Kazar and the state agency physician in making his evaluation of Plaintiff's physical limitations that impact his ability to perform work-related tasks. (T 19)  The ALJ noted Plaintiff's December 3, 2001 office visit to Lang Lin, M.D. ("Dr. Lin"), a cardiologist, who reported that Plaintiff was doing very well overall.[3] (T 292-93)  On March 5, 2002, Dr. Lin again evaluated Plaintiff and noted Plaintiff's comment that he was doing well from a cardiac standpoint. (T 286-87)

Thus, the court concludes that the ALJ's RFC determination is based on substantial evidence.

**D.**      Plaintiff also contends that the ALJ's reasons for finding his complaints of pain and other subjective symptoms as not fully credible are not supported by substantial evidence (Dkt. 16 at 22).

It is incumbent on the ALJ to make credibility findings as to claimant's testimony.  See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  The Eleventh Circuit has established a three-part standard to use when evaluating a claimant's subjective complaints of pain or other subjective symptoms.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient

---

[3] Plaintiff was hospitalized at Morton Plant Hospital shortly after his December 3, 2001 appointment with Dr. Lin due to his wife's concerns that he was suicidal. (T 15-16) He was discharged on December 17, 2001, because he was tolerating his medications and stated that he felt "excellent".  (T 171)  It was then that he started mental health treatment with Dr. Mastor and with Gerardo Sison, M.D. ("Dr. Sison"). (T 15) Dr. Sison's progress notes of Plaintiff's visits mention Plaintiff's belief that he was "doing good."  (T 159, 161)

severity that it would be reasonably expected to produce the pain alleged.  <u>Landry v. Heckler</u>, 782 F.2d 1551, 1553 (11th Cir. 1986).[4]

Although the ALJ did not expressly cite to the applicable standard, his findings and discussion indicate that the ALJ was aware of and applied the proper standard.  <u>See</u> <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1226 (11th Cir. 2002).  The ALJ analyzed whether the medical evidence supported the severity of Plaintiff's allegations of disabling pain and found no evidence of limitations to the extent alleged by Plaintiff. (T 20-21)  The ALJ therefore found Plaintiff's testimony regarding disabling pain not credible. (T 21)  Thus, the question remaining is whether the ALJ's assessment of Plaintiff's testimony regarding his symptoms and restrictions is based on substantial evidence.[5]  The court concludes that it is.

The ALJ's decision provides a detailed summary of Plaintiff's testimony, including Plaintiff's statement that he experiences chest pain and discomfort weekly and that nitroglycerine relieves the pain but leaves him with a bad headache. (T 20) Plaintiff testified to occasional asthma attacks. (<u>Id.</u>)  He also testified that he is tired on a daily basis, walks only about 20-30 yards to pick up mail, has memory problems, and is sometimes not able to remember to take his medication. (<u>Id.</u>)  He does no chores or yard work and watches television daily, although he asserts he is not able to follow a plot on a program. (<u>Id.</u>)  He plays cards on the computer every day. (<u>Id.</u>)  Plaintiff stays

---

[4] This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." <u>Elam v. R. R. Ret. Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

[5] Credibility determinations are the province of the Commissioner, so long as those determinations are supported by substantial evidence.  <u>See</u> <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1219 (11th Cir. 1991) (citation omitted).

away from people and feels more comfortable with his family; some days he never leaves his bedroom. (Id.)

Applying the applicable standard, the ALJ concluded that Plaintiff exaggerated his symptoms. (T 20)  The ALJ cited the following reasons: (1) Plaintiff's statements that he had not lifted weights since arriving in the United States 21 years ago were contradicted by the 2001 medical report of Dr. Lin[6]; (2) Plaintiff's testimony that he had undergone 13-14 angioplasties since 1991 were not supported by hospital records; and (3) statements by Plaintiff's treating cardiologists indicated that Plaintiff's heart condition is stable. (Id.)

In attempting to refute the ALJ's findings, Plaintiff emphasizes that medical records show that he has had multiple coronary interventions, thus his statement regarding 13 to 14 angioplasties is not untrue (Dkt. 16 at 23).  Plaintiff points to his May 1, 2003 hospital stay for chest pain and a September 2004 procedure,[7] and his treating physicians' mention of Plaintiff's previous coronary interventions (Id.).

Plaintiff also asserts that the ALJ's finding regarding his weight lifting is erroneous because the physician's statement cited by the ALJ is dated December 3, 2001, and Plaintiff's disability onset date is December 6, 2001 (Id. at 24).  Citing evidence of memory problems, Plaintiff also asserts that it should not be surprising that he does not recall when he last lifted weights.

---

[6] During Dr. Lin's December 3, 2001 examination of Plaintiff, he stated that he does push-ups and weight lifting. (T 292)

[7] After the ALJ issued his decision on September 23, 2004, Plaintiff was admitted to the hospital from September 25, 2004, to September 29, 2004. (T 460) During this stay, Plaintiff underwent a thallium stress test, heart catheterization with percutaneous coronary intervention and stenting. (Id.)  Plaintiff supplemented the record with evidence of this hospital stay, and the evidence was before the Appeals Council when it denied Plaintiff's request for review on June 27, 2005, and allowed the ALJ's decision to stand. (T 3-6)

Because Plaintiff's claim of 13 or 14 angioplasties was not supported by the record, the ALJ obtained all of the records of Morton Plant Hospital, the facility where Plaintiff testified he was treated. (T 20, 526)   The record does reflect multiple cardiac procedures (although not angioplasties); however, the record also includes statements from Plaintiff's treating physicians that Plaintiff is doing well from a cardiac standpoint.  In March of 2002, Dr. Lin examined Plaintiff and noted: "At the present time, [Plaintiff] states that he is doing well from cardiac standpoint of view but not too well from depression standpoint of view." (T 286) Also, in April of 2004, Peter Soudjin, M.D. ("Dr. Soudjin") examined Plaintiff and stated that "[Plaintiff] has not had any chest pain or shortness of breath or palpitations.  He states his overall mood is much better.  He denies any back pain." (T 412) The ALJ asked Plaintiff numerous times about the number of angioplasties he has undergone; Plaintiff was very clear that he had undergone 13 or 14 angioplasties and that all but one had been performed at Morton Plant Hospital. (T 511, 526, 528)  Plaintiff's testimony reveals that he understands some of the basic differences between types of cardiac procedures. (T 511, 525, 528)

Further, as to Plaintiff's testimony regarding exercise, he stated that he lifted weights for many years but stopped once he moved to the United States 20 or 21 years ago. (T 530)  However, Plaintiff reported to Dr. Lin on three occasions that he was exercising. (T 292, 298, 306)   Plaintiff even specifically reported working out with weights. (T 292)  Dr. Lin made his notes concerning Plaintiff's exercise habits prior to the alleged disability onset date; however, they provide substantial evidence to reject Plaintiff's testimony that he had stopped lifting weights 20 years earlier.

Therefore, substantial evidence supports the ALJ's credibility determination.  See generally Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989).

## III.

The ALJ's decision is supported by substantial evidence and the proper legal principles.  The decision of the Commissioner denying Plaintiff's application for DIB and SSI is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** that:

(1)     Plaintiff's **Motion for Remand** (Dkt. 18) is **DENIED**;

(2)     the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, each party to bear its own costs and expenses; and

(3)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g) and close the file.

**DONE AND ORDERED** in Tampa, Florida on this 20th day of September, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge

16